IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

ANDREW R. WILLIAMS                                                    PLAINTIFF


        v.                            CIVIL NO. 11-3002


MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                        DEFENDANT


## MEMORANDUM OPINION

        Plaintiff, Andrew R. Williams, brings this action pursuant to 42 U.S.C. § 405(g), seeking

judicial review of a decision of the Commissioner of the Social Security Administration

(Commissioner) denying his claims for a period of disability and disability insurance benefits

(DIB) under the provisions of Title II of the Social Security Act (Act).  In this judicial review,

the Court must determine whether there is substantial evidence in the administrative record to

support the Commissioner's decision.  See 42 U.S.C. § 405(g).

## I.      Procedural Background:

        Plaintiff protectively filed his current application for DIB on May 8, 2007, alleging an

inability to work since January 11, 2001,[1] due to migraines with severe pain, memory loss and

confusion, anxiety, depression, and pancreatic attacks.  (Tr. 96-97, 110).  For DIB purposes,

Plaintiff maintained insured status through March 31, 2003.  (Tr. 100).  An administrative

---

[1]At the hearing before the ALJ on October 22, 2008, Plaintiff amended his onset date to March 11, 2003.  (Tr.
18).

hearing was held on October 22, 2008, at which Plaintiff appeared with counsel and testified. (Tr. 14-45).

By written decision dated January 14, 2009, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe. (Tr. 59). Specifically, the ALJ found Plaintiff had the following severe impairments:  migraines, anxiety and depression.  However, after reviewing all of the evidence presented, he determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4.  (Tr. 59).  The ALJ found that prior to March 31, 2003, Plaintiff retained the residual functional capacity (RFC) to:

> lift and carry 10 pounds occasionally and less than 10 pounds frequently.  He can sit for about 6 hours during an eight-hour workday and can stand and walk for about 2 hours during an eight-hour workday.  He can occasionally climb, balance, stoop, kneel, crouch, and crawl. He cannot drive.  He can perform low-stress, unskilled work.

(Tr. 59).  With the help of a vocational expert, the ALJ determined that during the relevant time period, Plaintiff could perform work as an assembly worker, a charge account clerk, and an addressing clerk. (Tr. 64).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which, after reviewing additional evidence, denied that request on November 22, 2010.  (Tr. 1-5). Subsequently, Plaintiff filed this action.  (Doc. 1).  This case is before the undersigned pursuant to the consent of the parties. (Doc. 3).  Both parties have filed appeal briefs, and the case is now ready for decision.  (Docs. 6,7).

-2-

**II.      Evidence Presented:**

At the administrative hearing held before the ALJ on October 22, 2008, Plaintiff who was forty-three years of age at that time, testified that he had earned an associates degree of general science. (Tr. 20, 22).  Plaintiff reported that over the past year he had been able to complete three free graphic design jobs. (Tr. 35-36).  The record reflects Plaintiff's past relevant work consists of work as graphic designer.  (Tr. 118).

The medical evidence dated prior to the relevant time period shows that Plaintiff was seen by Dr. Burton Bledsoe on December 3, 2002, for a blood pressure follow-up.[2]  (Tr. 189). Plaintiff reported that he had his teeth extracted the prior week, and since that time had stopped smoking, but had smoked that day because he had run out of nicotine patches.  Plaintiff reported he had not taken his Hydrocodone in two days.  He also reported feeling fatigued, and that he had abdominal cramping, mild rhinorrhea and some problems with anxiety.   After examining Plaintiff, Dr. Bledsoe diagnosed him with well-controlled hypertension; fatigue likely due to nicotine withdrawal and lack of opiates; and allergic rhinitis.  Plaintiff was to continue to take Lotrel for his blood pressure and Allegra for his allergies.  Plaintiff was to continue not smoking and to use nicotine patches as needed, and to refrain from using opiates.  Plaintiff was to follow-up in six months.

The medical evidence during the relevant time period of March 11, 2003, through March 31, 2003, revealed the following.   On March 11, 2003, Plaintiff complained of temporomandibular joint pain with popping and headaches.  (Tr. 190).  Plaintiff reported

---

[2] While not specifically addressed in this opinion, the Court notes that all of the medical evidence dated before and after the relevant time period was reviewed.  This included the additional evidence submitted to the Appeals Council.

experiencing these symptoms for the past four months.  Plaintiff also reported back pain for the past three months.  Plaintiff reported that the pain started about thirty minutes after he woke up in the morning and lasted the entire day.  Plaintiff reported that Motrin helped "a bit" to relieve his symptoms.  Plaintiff denied photophobia, nausea or vomiting.  Plaintiff reported he had migraines before and that he did not think this pain was a migraine.  Dr. Bledsoe noted that:

> [Plaintiff] was told that since he had a long time where he had no teeth...after the dentures were done that his jaws were irreversibly damaged and would have pain in temporomandibular joint regions unless [he] had implants.

(Id.).  Plaintiff was noted to have spasm in his upper shoulders and back, but no radiation or pain into the upper extremities. Dr. Bledsoe noted Plaintiff had no crepitation of the left or right temporomandibular joints.  Plaintiff also had full range of motion of the cervical spine without pain. Dr. Bledsoe diagnosed Plaintiff with headaches, with possible rebound component but not migraines; allergic rhinitis; and hypertension.  Dr. Bledsoe gave Plaintiff Allegra samples and a prescription for Flexeril.  Dr. Bledsoe indicated he would keep Plaintiff on nsaids (nonsteroidal anti-inflammatory drugs) for now, but that he might stop this medication due to rebound. Plaintiff was to return in four to six weeks.

On April 10, 2003, Plaintiff came in for a follow-up appointment for his headaches and hypertension.  (Tr. 192).  Plaintiff reported the same intensity and type of pain that seemed to occur for an hour to an hour and a half.  Plaintiff reported that the Flexeril knocked him out and made him feel hung over the next day.  Plaintiff reported that he had some nausea, but he thought that was due to sinuses.  Plaintiff also reported low back and neck pain.  Plaintiff indicated that he had taken a trip to Georgia and Alabama, and that he had increased issues with allergies while there.  Upon examination, Dr. Bledsoe noted Plaintiff had full range of motion of the cervical

-4-

spine and no tenderness to palpation.  Dr. Bledsoe diagnosed Plaintiff with chronic daily headaches, hypertension, and allergic rhinitis.  Dr. Bledsoe indicated that he wanted to avoid using opiates, and that Plaintiff wanted methadone, which Dr. Bledsoe was hesitant to prescribe. Plaintiff was to limit his use of Hydrocodone, to stop Flexeril and to start Skelaxin; and to continue Tylenol/Motrin for pain.

On September 5, 2007, Dr. Jim Takach, a non-examining medical consultant, completed a RFC assessment stating that prior to March 31, 2003, Plaintiff could occasionally lift or carry twenty pounds, frequently ten pounds; could stand and/or walk for about six hours in an eight-hour workday; could sit for a total of about six hours in an eight-hour workday; and could push or pull unlimited, other than as shown for lift and/or carry.  (Tr. 276-283).  Dr. Takach opined Plaintiff could occasionally climb, balance, stoop, kneel, crouch or crawl; and that manipulative, visual, communicative or environmental limitations were not evident.  Dr. Takach's notes stated:

> 41 yo with a hx of chronic diffuse PT myofascial pain - CX/LS - w/o demonstrated nm loss UE/LE - chronic pain management with variable response to Rx.
> Hx of resection of a benign pancreatic mass - no sequelae demonstrated
> Hx of uncomplicated HA's
> From the available MER - retained ability to function with LIGHT work restrictions <DLI is demonstrated.

(Tr. 277).

On September 13, 2007, Dr. Brad F. Williams, a non-examining medical consultant, completed a psychiatric review technique form opining that Plaintiff did not have a medically determinable impairment prior to March 31, 2003.  (Tr. 318-331).  Dr. Williams stated:

> This is a 41 y/o who alleges multiple mental problems.  Disability would need to be established as of 3/31/03, the DLI[.] Available records indicate tx for multiple

physical problems, but only mention of an (sic) mental impairment is possible anxiety in 1/01.

Therefore, there is no MDI as of 3/31/2003.

(Doc. 330).

On July 3, 2007, Dr. Bledsoe completed a medical source statement opining that Plaintiff was unable to perform even sedentary work.  (Tr. 332-334).

### III.   Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed if the record contains substantial evidence to support it.  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently.  Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001).  In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed.  Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity.  Pearsall v.

-6-

Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § § 423(d)(3), 1382(3)(c).  A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience.  See 20 C.F.R. §§ 404.1520, 416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity.  See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

**IV.   Discussion:**

Plaintiff contends that the ALJ erred in concluding that the Plaintiff was not disabled. Defendant argues substantial evidence supports the ALJ's determination that Plaintiff was not disabled prior to March 31, 2003, his date last insured.

AO72A
(Rev. 8/82)

### A.    Insured Status:

In order to have insured status under the Act, an individual is required to have twenty quarters of coverage in each forty-quarter period ending with the first quarter of disability.  42 U.S.C. § 416(i)(3)(B).  Plaintiff last met this requirement on March 31, 2003.  Regarding Plaintiff's application for DIB, the overreaching issue in this case is the question of whether Plaintiff was disabled during the relevant time period of March 11, 2003, his alleged onset date of disability, through March 31, 2003, the last date he was in insured status under Title II of the Act.

In order for Plaintiff to qualify for DIB he must prove that, on or before the expiration of his insured status he was unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which is expected to last for at least twelve months or result in death.  Basinger v. Heckler, 725 F.2d 1166, 1168 (8th Cir. 1984). Records and medical opinions from outside the insured period can only be used in "helping to elucidate a medical condition during the time for which benefits might be rewarded." Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir.2006) (holding that the parties must focus their attention on claimant's condition at the time she last met insured status requirements). "New evidence is required to pertain to the time period for which benefits are sought and cannot concern subsequent deterioration of a previous condition." Moore v. Astrue, 572 F.3d 520, 525 (8th Cir. 2009)(citing Jones v. Callahan, 122 F.3d 1148, 1154 (8th Cir.1997) (holding that claimant's non-disabling knee condition that later deteriorated into a disabling condition after the expiration of a claimant's insured status cannot be the basis for an award of disability benefits)).

-8-

### B.    Subjective Complaints and Credibility Analysis:

We first address the ALJ's assessment of Plaintiff's subjective complaints.  The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to:  (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions.  See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole.  Id.  As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide."  Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly evaluated Plaintiff's subjective complaints.  Although Plaintiff contends that his impairments were disabling prior to the expiration of his insured status, the evidence of record does not support this conclusion.

The medical evidence revealed that on March 11, 2003, Plaintiff was treated for temporomandibular joint pain with popping and headaches.  The evidence revealed that Plaintiff had all of his teeth extracted in December of 2002, and that he had been told that due to the length of time between having no teeth and having his dentures provided that he would have more temporomandibular joint pain unless he had implants.  At that time, Dr. Bledsoe noted Plaintiff had no crepitation of the left or right temporomandibular joints.  Plaintiff also had full

-9-

range of motion of the cervical spine without pain.  At that time, Plaintiff denied photophobia, nausea or vomiting.  The record showed that in April of 2003, after Plaintiff's insured status had expired, Plaintiff did complain of continued headaches; however, Plaintiff also reported that he had just returned from a trip to Georgia and Alabama, which does tend to support that Plaintiff's headaches were not as severe at that time.  The ALJ also pointed out that in April of 2003, Dr. Bledsoe instructed Plaintiff to limit his use of Hydrocodone, to use Skelaxin, and to use Tylenol/Motrin for his pain.  Haynes v. Shalala, 26 F.3d 812, 814 (8th Cir. 1994) (lack of strong pain medication was inconsistent with disabling pain).  The medical evidence appears to show that Plaintiff's headaches worsened after his insured status had expired, and that Plaintiff was later diagnosed with sleep apnea, chronic low back pain, depression, confusion and other impairments.  While this might provide a basis for the filing of a new application for supplemental security income benefits, it does not provide a basis for remand of the current action.

With regard to Plaintiff's alleged depression and anxiety, there is no medical evidence of record revealing that Plaintiff sought on-going and consistent treatment for his alleged depression and anxiety during the relevant time period.  See Gowell v. Apfel, 242 F.3d 793, 796 (8th Cir. 2001) (holding that lack of evidence of ongoing counseling or psychiatric treatment for depression weighs against plaintiff's claim of disability).   After reviewing the evidence of record, the Court finds substantial evidence to support the ALJ's finding that during the relevant time period, Plaintiff did not have a disabling mental impairment.

With regard to Plaintiff's activities of daily living, the records for the relevant time period fail to support Plaintiff's allegations that he was unable to perform most activities of daily living

-10-

prior to March 31, 2003. Again, it is noteworthy that in late March or early April 2003, Plaintiff was able to take a trip to Alabama and Georgia.

Therefore, although it is clear that Plaintiff suffers with some degree of limitation prior to his date last insured, he has not established that he was unable to engage in any gainful activity during the relevant time period. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

**C.     RFC Assessment:**

We next turn to the ALJ's assessment of Plaintiff's RFC. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In finding Plaintiff able to perform sedentary work with limitations, the ALJ considered Plaintiff's subjective complaints, the medical records of his treating and examining physicians, and the evaluations of the non-examining medical examiners. Plaintiff's capacity to perform this

-11-

level of work is supported by the fact that Plaintiff's examining physicians placed no restrictions on his activities that would preclude performing the RFC determined during the relevant time period.  See Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability).

With regard to the opinions of Plaintiff's treating physician, the ALJ found that Dr. Bledsoe's July 3, 2007 opinion that Plaintiff was unable to perform even sedentary work was inconsistent with the medical records as a whole, as well as with his own treatment records. Davidson v. Astrue, 501 F.3d 987, 990-91 (8th Cir. 2007) (finding ALJ correctly discounted a physician's assessment report when his treatment notes contradicted the report).  With regard to this assessment, Dr. Bledsoe opined that based upon Plaintiff's diagnoses of chronic migraines and anxiety with depression, Plaintiff was unable to even perform sedentary work.  A review of the medical evidence showed that Dr. Bledsoe did not diagnose Plaintiff with migraine headaches until after his insured status had expired.  In March of 2003, Dr. Bledsoe opined that Plaintiff did not have migraine headaches.  (Tr. 190).  With regard to Plaintiff's alleged mental impairments, the record showed that Dr. Bledsoe did not diagnose and start to treat Plaintiff's depression until July of 2003, almost four months after Plaintiff's insured status had expired.  Based on our above discussion of the medical evidence and the record as a whole, the Court finds substantial evidence of record to support the ALJ's RFC determination.

**C.     Hypothetical Question to the Vocational Expert:**

After thoroughly reviewing the hearing transcript along with the entire evidence of record, the Court finds that the hypothetical the ALJ posed to the vocational expert fully set forth the impairments which the ALJ accepted as true and which were supported by the record as a whole.

-12-

Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005). Accordingly, the Court finds that the vocational expert's testimony constitutes substantial evidence supporting the ALJ's conclusion that prior to the expiration of his insured status, Plaintiff's impairments did not preclude him from performing work as an assembly worker, a charge account clerk, and an addressing clerk. Pickney v. Chater, 96 F.3d 294, 296 (8th Cir. 1996)(testimony from vocational expert based on properly phrased hypothetical question constitutes substantial evidence).

**V.      Conclusion:**

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed.  The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 14th day of February 2012.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)